PRENDENVILLE, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, January 7, 1908.

1. STREET RAILWAYS: Negligence: Consistent Instructions: Last Chance Rule. In an action for injuries caused by the collision of plaintiff's vehicle with a street car of the defendant, an instruction authorizing a recovery for plaintiff provided the motorman managing the car could have stopped the car in time to prevent the collision, if the plaintiff was exercising due care, was not inconsistent with an instruction authorizing a recovery in case the plaintiff was negligent and the motorman could have nevertheless avoided injuring him by exercising due care.

2. ————: ————: Last Chance Rule: Duty of Motorman. It is not the duty of the motorman to get his car under control when he sees a wagon on the track in front of him; that duty begins only when he ought to realize there is danger of a collision.

3. PERSONAL INJURIES: Measure of Damages: Permanent injury. In an action for damage on account of personal injuries

where the evidence tended to show that the plaintiff had not recovered the free use of his injured limb at the time. of the trial nearly three years afterwards, but his physician swore that the injury would not be permanent, it was error to submit to the jury, as an element of damage, the question whether the plaintiff's injuries were permanent.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest* and *Edward T. Miller* for appellant.

(1)   The court erred in giving plaintiff's instruction No. 2.   Shanks v. Traction Co., 101 Mo. App. 703; Allen v. Transit Co., 183 Mo. 411; Sommers v. Transit Co., 108 Mo. App. 318.   The instruction states that if the motorman "saw, or by keeping an ordinarily careful lookout for vehicles, would have seen the plaintiff driving upon the said tracks and thereafter by using the appliances upon said car for use in stopping or checking the speed of the same would have prevented said collision and negligently failed to do   so"   then plaintiff was entitled to recover if he was exercising ordinary care to look for said car and avoid injury therefrom.   (2) The court erred in giving plaintiff's instruction No. 3.   Kimble v. Railroad, 108 Mo. App. 78; Frank v. Transit Co., 112 Mo. App. 496.   The instruction is as follows:   "The court instructs the jury that although you should find from the evidence that the plaintiff did not exercise ordinary care to look or listen for a car, or in driving upon said tracks, yet if the jury find from the evidence that the motorman of the defendant transit company in charge of said car saw, or by keeping an ordinary careful lookout would have seen, the plaintiff's horse and wagon driving along said tracks and that plaintiff and his vehicle were in danger from said car, and thereafter by using the appliances upon

said car for use in stopping or checking the speed of the same and after he saw plaintiff's wagon, said motorman could have prevented the collision and plaintiff's injuries by stopping said car and that he failed to do so, then plaintiff is entitled to recover. By the term 'ordinary care' as used in these instructions is meant that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances, and the failure to exercise such ordinary care is negligence." (3) The court erred in giving plaintiff's instruction No. 4 as to the measure of damages. Heinzle v. Railroad, 182 Mo. 528; Steinmann v. Transit Co., 116 Mo. App. 673. Paragraph three of the instruction permitted a recovery for permanent injuries. Dr. Morfit testified positively and emphatically that plaintiff did not sustain any permanent injuries.

*Joseph Wheless* and *John P. Leahy* for respondent.

(1) The instruction No. 2 is a copy, *mutatis mutandis,* of the instruction approved by this court in Degel v. Transit Co., 101 Mo. App. 61; Klockenbrink v. Railroad, 172 Mo. 678; Petersen v. Transit Co., 199 Mo. 331; Schafstette v. Railroad, 175 Mo. 142; Baxter v. Transit Co., 198 Mo. 1. (2) "In drawing near plaintiff's vehicle from the rear, defendant's motorman could not have failed to see the danger and it was the province of the jury to determine whether, under all the circumstances in evidence, reasonable care was exercised on defendant's behalf to avoid the injury." Degel v. Transit Co., 101 Mo. App. 62; Shanks v. Traction Co., 101 Mo. App. 706; Goff v. Transit Co., 199 Mo. 709; Campbell v. Railroad, 175 Mo. 161. (3) Plaintiff's instruction No. 3 is exactly along the lines of the instruction on this subject approved by the Supreme Court in the now leading case of Rapp v. Transit Co., 190 Mo. 154.

STATEMENT.—Plaintiff alleges that on or about August 30, 1904, while he was driving a wagon along a street car track owned and used by the defendant company on Jefferson avenue in the city of St. Louis, one of defendant's cars then operated by defendant's servants at an excessive and careless rate of speed, was negligently caused by said servants to collide with and run into plaintiff's wagon, when by keeping a careful lookout and using the appliances on said car for checking its speed and stopping it, said servants could have prevented the collision. Plaintiff, a butcher, was driving south along Jefferson avenue about ten minutes before four o'clock in the morning of August 30, 1904. He was in a wagon that had a top over it, but was open at the sides and ends. The wagon contained meat which plaintiff was taking to his shop or his customers. He was driving along the west or south-bound track. The weather was clear and there were gas lights along the street. Plaintiff had entered Jefferson avenue at Sullivan avenue and had looked back several times while proceeding along Jefferson, but neither heard nor saw a car. Just before the collision he looked to the rear of his wagon and a car was nearly on him. He then tried to pull out of the track, but before he did so the collision occurred and he was knocked unconscious. His injuries, which were severe, confined him to the hospital forty-one days and kept him at home three or four months; after which period he was able to go about on crutches. After entering Jefferson avenue plaintiff had driven eight or ten blocks before the accident occurred. He could not tell how many times he looked for a car, but knew he did several times, and swore he had a habit of looking back when he was driving on a car track. He testified he could see ahead of him for half a block. The conductor of the car, who was subsequently discharged from service by the defendant company for an alleged delinquency, testified there were

gaslights along the street and a good headlight on the car which shed a very fine light for about a block or three-fourths of a block ahead, and, further, that the light would show an object on the track two or three hundred feet in advance of the car. The conductor testified further the car was proceeding at the rate of twenty or twenty-five miles an hour at the time of the collision, and when the wagon was struck it was knocked over on the sidewalk with plaintiff underneath, the car proceeding about two lengths further. The only passenger who was on the car swore the headlight was a very bright one and extended along the street about two blocks and that the car was traveling twenty or twenty-five miles an hour before the collision and had not slowed down; that it ran from a hundred to a hundred and sixty-five feet after striking the wagon. Certain ordinances were introduced which gave vehicles the right to use a car track when driving in the direction traveled by the car. At the conclusion of plaintiff's testimony the defendant requested an instruction that under the pleadings and evidence plaintiff could not recover; which instruction was refused and the case submitted to the jury on other instructions, of which complaint is made; as it is also of the refusal of the court to grant some instructions asked by defendant. No testimony was introduced by defendant and the case, as it was presented, is substantially set forth in the foregoing statement. One of the assignments of error is that the jury were told in an instruction given at plaintiff's instance, that if the motorman in charge of the car saw, or by keeping an ordinarily careful lookout for vehicles could have seen plaintiff driving his wagon on the track, and thereafter by using the appliances on said car for use in stopping and checking the speed of the same, could have prevented said collision and negligently failed to do so, and if the jury found from the evidence that plaintiff was exercising ordinary care to look out for

said car and avoid injury therefrom, the verdict should be in favor of the plaintiff. The criticism of said instruction is on this point: it told the jury in effect, that if the motorman, at any time after he saw the wagon on the track could have stopped the car by ordinary care and failed to do so, plaintiff was entitled to recover if he himself was using care; whereas the instruction should have told the jury that if the motorman could have stopped the car after the danger of a collision was, or in reason should have been, apparent, and failed to do so, plaintiff was entitled to a verdict if he himself was using care. Complaint is made of another instruction given for plaintiff, which told the jury that even if plaintiff did not exercise ordinary care to look and listen for a car when driving on the track, yet if the motorman saw, or by ordinary care could have seen plaintiff's horse and wagon on the track and in danger from the car, and thereafter, by using the proper appliances, could have prevented the collision and failed to do so, plaintiff was entitled to recover. The argument against this instruction is that it is inconsistent with the first one, in that the first advised the jury plaintiff could not recover unless he was exercising ordinary care; whereas the second one advised them he could recover even though he was not exercising said degree of care, if the motorman, by taking proper measures, could have stopped the car. In other words, that the second instruction put the whole duty to avoid the accident on the motorman. An instruction on the measure of damages is complained of because it allowed a recovery for loss of earnings when there was no statement in the petition or proof that plaintiff had lost earnings, and also allowed a recovery for permanent injury, when the petition did not demand or the evidence prove damages on said account. Two instructions asked by the defendant were refused. One of these told the jury that if they believed from the

evidence plaintiff was driving southward, and knew the car was approaching from the rear on the same track, and afterwards had time to avert the collision by exercising ordinary care to turn out of the way of the car and failed to do so, plaintiff was guilty of negligence; and if the jury found such negligence contributed to plaintiff's injury, the verdict must be for defendant. The other instruction told the jury it was the duty of plaintiff to look and listen for the approach of a car on the defendant's south-bound track from the rear, and if the jury believed he could, by the exercise of ordinary care, have discovered the car in time to drive out of the track and avert a collision and failed to do so, and thereby directly contributed to the collision, plaintiff was not entitled to recover. The court gave those instructions with an additional clause appended, the effect of which was that plaintiff could not recover under the circumstances predicated, unless the jury further believed the motorman, after he saw plaintiff's wagon, could, by the exercise of ordinary care, have stopped the car in time to avert injury to plaintiff.

GOODE, J. (after stating the facts).—We find no inconsistency between the first and second instructions. The first one submitted the case to the jury on the theory that a verdict for plaintiff was permissible if he was exercising care for his own safety at the time of the accident, and the motorman, after he saw, or in prudence ought to have seen the wagon on the track, could, by ordinary care, have stopped the car in time to prevent the collision. This is, of course, the law. The second instruction submitted the case on the theory that if plaintiff was not exercising care for his own safety in respect of watching for cars, nevertheless if the motorman could have avoided injuring him by exercising ordinary care, the defendant was liable. That is to say, the second instruction submitted the case on the theory

that it is the duty of a person who observes another in a position where he is subject to injury by what the first person is doing, to take precautions to avert the injury.    [Klockenbrink v. Railroad, 172 Mo. 678, 72 S. W. 900.]    Both the instructions in their main scope and view of the law were sound.    As to the criticism of the first instruction for imposing on the motorman the duty of stopping the car after he saw the wagon on the track, instead of after he realized the danger of a collision, we may concede defendant's proposition that the duty of a motorman to begin to get his car under control arises when he ought to realize there is danger of a collision.    In other words, the mere presence of a vehicle on a track no-matter how far ahead of a car, does not call for instant action by the motorman   to check the car's speed.    [Bell v. Railroad, 72 Mo. 50; Reno v. Railroad, 180 Mo. 469, 79 S. W. 464; Evans v. Railroad, 178 Mo. 508, 77 S. W. 515.]    Nevertheless, the instruction as given is accurate.    It told the jury that if the motorman, after he discovered the wagon on the track, or by keeping the proper lookout would have discovered it, could have prevented the collision by using the appliances at hand to stop the car, the defendant was liable, provided the plaintiff did not contribute to the accident.    It may not have been the motorman's duty to begin to stop the car as soon as he saw, or ought to have seen the wagon; that would depend on circumstances.    But it certainly was his duty to do so in time to prevent a collision if possible; and this is all the instruction told the jury.

The petition alleged permanent injuries and was sufficient in that regard to let in proof.    [Gerdes v. Iron Co., 124 Mo. 347, 25 S. W. 557.]    The only injury to plaintiff which it is contended may be permanent, was the fracture of his right knee cap; but the physician who attended him testified this injury would not be permanent, and defendant's counsel insist this state-

ment of the physician is conclusive, or rather, that there is no evidence tending to prove a permanent injury. It was shown all the injuries other than to the knee, were minor and healed quickly; that the tissues around the kneecap which were lacerated, would be reunited perfectly.   At the time of the trial the kneecap was not as moveable as formerly by reason of the callous substance which was thrown out by the bones or tissues in nature's effort to heal.   The physician further said he would not notice the motion of plaintiff's knee was impaired from seeing plaintiff walk; that in ordinary locomotion no difference would be observed in the movement of the two knees, but if plaintiff was running a difference would be noticed; that the condition of the knee would in no way interfere with plaintiff's usual occupation. Plaintiff himself testified he walked fairly well, but if he wanted to climb into his wagon he had to creep up step by step, and that he could not jump as he could before he was hurt; that he could not work in the slaughter house as he did before; could not stoop down as well, and in going upstairs had to take a step with his sound leg and then bring his lame one up, instead of alternating with his feet from step to step.    This testimony related to the condition of the limb at the time of the trial; which was in March, 1907.

The instruction on the measure of damages allowed the jury to award damages for pain and mental suffering which plaintiff had endured and would endure; also damages for any permanent injury caused directly by the accident, if the jury believed to a reasonable certainty his injury would be permanent in nature and effect.   Defendant's counsel insist there was no evidence to justify the court in instructing the jury they might assess damages for a permanent injury—no evidence from which such an injury could be inferred.   The only witness who testified on the subject was the physician who attended plaintiff and was put on the stand by

him.   He swore unequivocally there would be no per-
manent injury.   It is argued that the jury could judge
of the permanency of the injury from the description of
plaintiff's hurts at the time of the accident and the con-
dition he was in at the trial.   But it strikes us that
to do so would be going beyond the limit of legitimate
inference.   Though the injuries were originally severe
they had practically healed and plaintiff's inconven-
ience from them was not great.   Under the circum-
stances of the case the doctor's opinion was of much
weight, but we do not hold it was conclusive.   We do
hold, however, that no evidence was adduced, either
direct or circumstantial, positive or expert, to justify
a jury in finding plaintiff was permanently injured.
For this reason we hold that element of damages was
improperly included in the instructions.

The judgment is reversed and the cause remanded.
All concur.