## C. F. QUINLEY, Respondent, v. SPRINGFIELD TRACTION COMPANY, Appellant.

Springfield Court of Appeals, April 14, 1914.

1. **STREET RAILWAYS: Personal Injuries: Humanitarian Doctrine: Negligence: Question for Jury.** In an action against a street railway company for damages because of injuries caused by being struck by one of its cars where the plaintiff relied solely on the humanitarian doctrine, evidence is reviewed and examined and *held* sufficient to warrant submitting to the jury the question whether the motorman could have averted the collision by the exercise of due care.

2. ————: **Crossing Public Streets: Duty Motorman Owes Pedes-trians.** Ordinary care makes it incumbent on a motorman to be on the lookout for pedestrians passing over the track in a public street.

3. **EVIDENCE: Positive and Negative: When Not a Contradiction.** Positive evidence of disinterested witnesses to the effect that they heard the street car gong sounded, that their attention was attracted thereby and that they were caused to look up and see plaintiff, is not contradicted by the testimony of witnesses that they did not hear such signal, where there was no proof that the latter witnesses were capable of hearing or that their attention was on the matter.

4. **HUMANITARIAN DOCTRINE: Negligence: Prima-Facie Case: Street Railways.** In order to declare as a matter of law that plaintiff failed to make a prima-facie case under the humanitarian doctrine, it is necessary for the court to be able to say that the peril in which the plaintiff placed himself could not have been apparent to a reasonably prudent motorman in time for him to have stopped the car with safety to the passengers by the exercise of all the means at his command.

5. **PLEADING: Negligence: Sufficiency of Petition.** A petition which sets out the facts about which the plaintiff is complaining with reasonable certainty and clearness, followed by a general averment that the acts complained of were negligently done, is sufficient. Certainly it cannot be questioned after judgment.

6. **HUMANITARIAN DOCTRINE: Embraces What.** The humanitarian doctrine takes into account only the fact that one is in danger and that injury may be prevented by the exercise of ordinary care.

7. **DANGEROUS INSTRUMENTALITIES: Duty of One Operating.** One operating a dangerous instrumentality, upon approaching another in a perilous position, must use all the efforts dictated by reasonable prudence to check such instrumentality and he must give such warnings as are calculated to cause the one in peril to realize his dangerous position.

8. **INSTRUCTIONS: Broader than Issues Tendered by Pleadings: Erroneous.** An instruction cannot be broader than the issue tendered in the pleadings.

9. ————: **Broadening Issues: Petition and Instructions Examined.** An instruction that if the motorman saw, or by the exercise of ordinary care could have seen plaintiff in her perilous position and that thereafter he was negligent in that he failed to exercise ordinary care in the use of the means at his command to avoid the collision, etc., *held*, not broader than a petition

charging that after plaintiff's perilous position was known or by the exercise of ordinary care could have been known, the motorman negligently failed to give any signal or warning and negligently failed to check the car or stop it in time to prevent the injury.

10. ———: **Broadening Issues.** Though it is better practice to follow, as nearly as possible, in instructions the charges in the petition, yet there is no reversible error where the evidence, petition and instructions clearly show the issue was not in fact broadened.

11. **HUMANITARIAN DOCTRINE: Injured Person's Negligence as Basis: Contributory Negligence Excluded.** The humanitarian or last chance doctrine applies only when the negligence of the person injured is proven or admitted and when invoked it excludes from the case the question of contributory negligence.

12. **INJURIES: Permanent: Submission to Jury.** The submission to the jury of the question of permanent injuries upheld in an action against a street railway company for injuries occasioned by being struck by defendant's car.

13. **INSTRUCTIONS: No Prejudice Resulting From: Not Erroneous.** Though there might be a question as to the propriety of the submission of the question of permanent injuries in a certain case to the jury, yet there was no reversible error where the amount awarded clearly showed that defendant was not prejudiced by the instruction.

14. **INSTRUCTIONS: Personal Injuries: Street Railways: Negligence.** In an action against a street railway company for personal injuries occasioned by being struck by defendant's car, an instruction upheld which charged that it was the duty of the motorman to keep a reasonable lookout for persons approaching the track and if plaintiff was approaching the track and was unconscious of the car's approach and it was apparent to a reasonably prudent motorman that she was unmindful of danger and was going upon the track, then it was the motorman's duty to at once have taken precaution to have avoided the collision.

15. **INSTRUCTIONS: Humanitarian Doctrine: Instructions on Contributory Negligence Properly Refused.** Where plaintiff's petition is based solely upon the humanitarian doctrine and the evidence sustains his contention, instructions requested by defendant on contributory negligence are properly refused.

16. **WITNESSES: Expert: Hypothetical Question: What Embodied In.** It is reversible error to omit from a hypothetical question,

180 App. 19

put to an expert witness as to the distance within which a street car could be stopped, a statement as to the length, size, weight, and general condition of the car, kind of motor, braking appliances, nature of load, etc., as all these facts were necessary to determine the distance within which the car could be stopped.

Appeal from Greene Circuit Court.—*Hon. Arch A. Johnson*, Judge.

REVERSED AND REMANDED.

*Delaney & Delaney* for appellant.

(1) The petition does not state a cause of action. It nowhere charges a negligent act, nor charges an act to have been done negligently or carelessly. Thurmond v. Ash Grove Co., 125 Mo. App. 73; Rawson v. K. C. Co., 129 Mo. App. 613. (2) The petition is not bottomed on the humanitarian doctrine, nor does the evidence warrant a recovery on such theory. Grout v. Railroad, 125 Mo. App. 552-561. (3) The negligence of plaintiff was clearly the proximate cause of the injury, hence the humanitarian doctrine does not apply and demurrer should have been sustained. Schmidt v. Railroad, 191 Mo. 215; Fry v. S. L. T. Co., 111 Mo. App. 324; Boring v. Railroad, 194 Mo. 541. (4) The submission by instruction cannot be broader than the issue tendered. Davidson v. S. L. T. Co., 211 Mo. 320; Beave v. S. L. T. Co., 212 Mo. 331; Heinzle v. Railroad, 213 Mo. 102; Lowenstein v. Railroad, 110 Mo. App. 686; Schroeder v. S. L. T. Co., 111 Mo. App. 67; Wojtylak v. K. T. Co., 188 Mo. 260; Hamilton v. Railroad, 114 Mo. App. 504. (5) Instruction 2 is self-contradictory and inconsistent. It submits the humanitatrian doctrine and at the same time declares that contributory negligence is excluded. Wallack v. S. L. T. Co., 123 Mo. App. 160; Gessner v. Railroad, 134 Mo. App. 696. (6) Where one instruction is bad (especially one on the whole case) and another is good it constitutes

reversible error, for the court cannot determine which the jury followed. The presumption is the bad one influenced if not controlled the jury. Ross v. Railroad, 132 Mo. App. 472; Shepherd v. S. L. T. Co., 189 Mo. 362; Porter v. Railroad, 199 Mo. 82; Hamilton v. Railroad, 114 Mo. App. 504; Glasgow v. Railroad, 191 Mo. 374; Wallack v. S. L. T. Co., 123 Mo. App. 160; Prendenville v. S. L. T. Co., 120 Mo. App. 596; Russell v. Poor, 133 Mo. App. 729. (7) Defendant was entitled to clear-cut instructions submitting issue of contributory negligence separate and independent of other instructions, and especially independent of humanitarian doctrine. Wallack v. Transit Co., 123 Mo. App. 160; Wren v. Railroad, 125 Mo. App. 604; Ghio v. Railroad, 125 Mo. App. 710; Tinkle v. Railroad, 214 Mo. 445; Haas v. Railroad, 128 Mo. App. 79; Ross v. Railroad, 132 Mo. App. 472; Flaherty v. St. L. T. Co., 207 Mo. 318; Van Horne v. St. L. T. Co., 198 Mo. 481; Hartman v. St. L. T. Co., 12 Mo. App. 439; King v. Railroad, 211 Mo. 13. (8) The alleged hypothetical questions on speed did not embrace the evidence. Lynch v. Railroad, 208 Mo. 139; Boring v. Railroad, 194 Mo. 541; Gouty v. Railroad, 35 Mo. App. 92.

*Hamlin & Seawell* for respondent.

(1) The petition is sufficient in every respect and especially after judgment. White v. Railroad, 202 Mo. 539; McQuade v. Railroad, 200 Mo. 150; Wyler v. Ratican, 150 Mo. App. 474. (2) The verdict being based upon substantial evidence is final in this court. Ellis v. Railroad, 234 Mo. 657; Waddell v. Railroad, 113 Mo. App. 680; White v. Railroad, 202 Mo. 439; Dutcher v. Railroad, 241 Mo. 138; Moore v. Transit Co., 194 Mo. 1; Childress v. Railroad, 141 Mo. App. 682. (3) The instructions were correct and have been approved in many cases. Ellis v. Railroad, 234 Mo. 675, 676; Moore v. Railroad, 136 Mo. App. 215; Frazier v. Smelting

Co., 150 Mo. App. 420; Panos v. Car Co., 147 Mo. App. 547. (4) In a case based upon the humanitarian doctrine, it is proper to refuse an instruction which does not include that hypothesis. Williams v. Railroad, 149 Mo. App. 489; O'Farrell v. Railroad, 157 Mo. App. 618; Strauss v. Railroad, 166 Mo. App. 153. (5) No improper evidence was admitted. Bier v. Transit Co., 197 Mo. 231; Goff v. Transit Co., 199 Mo. 694-708; Richmond v. Railroad, 123 Mo. App. 495.

FARRINGTON, J.—Suit for personal injuries. Plaintiff recovered verdict and judgment for two thousand dollars. Defendant has perfected an appeal to this court.

The plaintiff's petition is based solely upon the humanitarian doctrine. The answer consists of a general denial, and a special defense which is in the nature of a general denial, admitting defendant's incorporation, and alleging that plaintiff walked upon the track of the defendant in front of an approaching street car and so close thereto that the same could not by the exercise of ordinary care be stopped in time to have prevented the collision. At the close of all the evidence the defendant requested an instruction in the nature of a demurrer to the evidence which was refused, of which ruling, together with others to which we will refer, complaint is now made. As the plaintiff's case, if she has a case, must withstand the attack made by the demurrer to the evidence, we will first notice that point.

There is evidence in the record tending to show a state of facts which we think clearly entitled the plaintiff to have her case submitted to the jury.

Summarized from a long record, the facts are about as follows: The defendant owns and operates an electric street railway system with a double track running east and west on Commercial street in the city of Springfield, Missouri, interesecting Lyon street which runs north and south and which has a sidewalk

only along its east side. Defendant's cars running west on Commercial street travel along the north track, and stop on the west side of Lyon street to take on or let off passengers if there are any. Defendant's cars moving eastward along Commercial street travel along the south track. Boonville street, running north and south parallel with Lyon street, intersects Commercial street at a point two blocks east of Lyon. The grade from Boonville street to a point west of Lyon street is a descending one to some extent. The accident occurred on defendant's north track on Commercial street in the daytime somewhere between the east and west curb lines of Lyon street if they were projected into Commercial street as far as the defendant's tracks. The width of Lyon street, between the curb lines is twenty-nine and one-half feet. The plaintiff, a married woman about sixty-seven years of age, left the house from which she was moving (which was somewhere north of the place of the accident) and came south along the east side of Lyon street. She intended to cross to the south side of Commercial street and go on south on Lyon. She had in her arms a mirror, an umbrella, a sack with some young chickens in it, and probably one other bundle, and wore a fascinator or some covering over her head and ears but which did not interfere with her vision. The evidence tended to show that she left the sidewalk on the east side of Lyon street, stepped down from the curb into Commercial street, and proceeded to cross the last named street in a southwesterly direction. The distance from the curb line of Commercial street to defendant's north track is about twenty-one feet. She proceeded in this direction, walking about one mile per hour, picking her way over the street which had been made muddy by a recent rain, and without looking once to the east, in which direction a person similarly situated could see a car coming for a distance of at least two blocks, she walked onto the north track and got near the south rail

of the north track when a car coming from the east struck her and threw her up and back on the pavement north of the track. The car stopped so that the back end of it was several feet west of where she was thrown, and the back end of the car was standing at a point on the track near or opposite the west curb line of Lyon street. She testified that as she walked from the curb line out toward the track a westbound car passed her and that she glanced at it as it went by and that she never thought of looking toward the east and therefore did not see the car which was following the one that passed her.

There is no issue or question about her negligence in walking upon the track under the circumstances. The issue is as to whether the motorman in charge of the car saw or by the exercise of ordinary care could have seen plaintiff on the track or approaching the track in dangerous proximity thereto apparently oblivious of the approach of his car in time to have warned her by signals or to have checked the speed of the car or to have brought it to a stop in time to have averted the collision. In crossing the public street plaintiff was at a place where she had a right to be and at a place where the exercise of ordinary care required the motorman to be on the lookout for persons passing over or upon the track.

The evidence for the plaintiff tends to show that at a point one hundred and eighteen feet east of the point of collision a witness on the sidewalk on the south side of Commercial street observed the car which struck plaintiff going west at a speed of about ten or twelve miles an hour, at which time he saw the plaintiff slowly walking between the north curb line of Commercial street and defendant's north track on which the car was approaching and on which the accident occurred. The evidence introduced by the plaintiff is of a negative character as to warning signals; that is, the plaintiff and two or three of her witnesses, one of

whom stood at or near the end of the sidewalk running from Lyon into Commercial street, and another (the witness who observed the car and the old lady from the point one hundred and eighteen feet from the point of contact) all swear that they did not hear any alarm signals, none swearing positively that alarm signals were not in fact sounded. In this respect there is a square conflict in the evidence because the motorman, conductor, and three or four disinterested witnesses who were passengers on the car and others in the vicinity of the place of collision, swear positively that their attention was called to the violent manner in which the motorman was ringing the gong and that it caused them to look to see what was the matter and that they observed the plaintiff on or near the track when the car was some fifty to thirty-five feet east of the point of contact. The evidence of the defendant shows that the car was about thirty feet in length. Plaintiff's witness, Mrs. Williams, who stood at the corner of Lyon and Commercial streets, testified that when she first saw the old lady she was at about the middle of the track; that at that time she noticed that the car was distant from plaintiff about a car's length and a half; that at the same time she noticed an expression on the motorman's face which indicated to her that he was about to run over something, and that it was then that she turned and saw the old lady on the track, and that she turned her head to avoid seeing the collision. It appears that the witness, Mrs. Williams, had been directing her attention toward the east and that the plaintiff had passed behind her and started across Commercial. When she realized that an accident was about to occur, with the old lady on the north track at about the center thereof and the car only the distance of a car's length and a half away, she noticed that the motorman was scared and she turned away and does not know whether he did anything to check or stop the car. Another witness for plaintiff (the one who stood at the point one

hundred and eighteen feet from the point of contact) did not see the car strike the plaintiff. He testified that he noticed the car and noticed the old lady and then did not continue to watch the car. In answer to a question he stated that he did not notice the car slowing down or coming to a stop before it hit her, which of course he could not have done if he failed to watch the car from the time when it was one hundred and eighteen feet away down to the place of the collision. The overwhelming evidence in this record, and all that is of any probative value is to the effect that at a point on the track fifty to thirty-five feet east of the point of collision the motorman noticed the perlious position of the plaintiff and commenced to apply the brakes and give warning. The plaintiff was admittedly deaf to a certain extent prior to the accident, and had a fascinator over her ears. She did not hear the gong sounded. The witness who stood one hundred and eighteen feet east of the point of collision saw the car pass and noticed the old lady, but went on his way not watching the car, and he did not hear the gong sounded. He, likewise, was admittedly deaf to a certain extent. Mrs. Williams, plaintiff's witness who stood on the corner had walked out to take a car, but upon seeing that the car in question was not the one she wanted, she turned away from it and walked back toward the curb to await her car, so that her attention was taken from it. None of the witnesses for plaintiff who say they did not hear any signal given show that they were capable of hearing, or were attentive, or that their attention was directed toward listening for signals. Such statements made under such circumstances fall short of being evidence or of contradicting the positive testimony of those (also wholly disinterested) who affirmatively swore that they heard the gong clanging and that it called their attention to the fact that something was wrong and that because they heard the warning signal they looked up and saw the plain-

tiff. [See, Williamson v. Railroad, 139 Mo. App. 481, 488, 122 S. W. 1113; Butler v. Railroad, 117 Mo. App. 354, 93 S. W. 877; Henze v. Railroad, 71 Mo. 636, 638; Bennett v. Railroad, 122 Mo. App. 1. c. 709, 99 S. W. 480; Sanders v. Railroad, 147 Mo. 411, 424, 48 S. W. 855; Shaw v. Railroad, 104 Mo. 657, 16 S. W. 832; Cathcart v. Railroad, 19 Mo. App. 113.] The motorman testified that the car had been slowed down by the time he struck plaintiff to a speed of four or five miles an hour and that it was then stopped within a distance of thirty-five to forty-five feet. As before stated, the plaintiff's evidence tends to show that the car at a point one hundred and eighteen feet from the point of collision was running at a speed of about ten or twelve miles an hour. The defendant's evidence tended to show that the car was running, up to a point near the intersection of Lyon street, at a speed of about eighteen or twenty miles an hour, and that owing to a recent rain and the slick condition of the track it was impossible to stop the car after the motorman reached a point some fifty or forty-five feet from the plaintiff when he first realized that she did not intend to stop. The conflict here is that Mrs. Williams, plaintiff's witness, testified that plaintiff was at that time on the track, whereas defendant's evidence tends to show that plaintiff at that time was nearing the track and had reached a place where it was apparent that she was going upon the track.

In order to declare as a matter of law that the plaintiff failed to make a prima-facie case under the humanitarian doctrine, it would be necessary to say that the peril in which the plaintiff placed herself did not and could not have been apparent to a reasonably prudent motorman until he had reached a point about forty-five feet from her. In view of the age of the plaintiff (though it appears that she was active for one of her years) and the fact that her head was wrapped up and that her face was at no time turned in a

direction to indicate that she knew of the approach of the car, and that she was carrying several bundles, and that she was walking at a very slow gait, picking her way over the muddy street toward the track, it would be going in the face of the decisions of this State to hold that the plaintiff had not made a case for the jury. It would require us to find as a matter of law that under these circumstances and surroundings her obliviousness would not have become apparent to an ordinarily vigilant motorman until he had reached a point about forty-five feet from her. [See, Waddell v. Railroad, 213 Mo. 8, 111 S. W. 542; Murphy v. St. Joseph, Etc., Co., 138 Mo. App. 436, 122 S. W. 334; Ellis v. Railroad, 234 Mo. 657, 138 S. W. 23; Dutcher v. Railroad, 241 Mo. 137, 145 S. W. 63.] It must be remembered that the case as made by the plaintiff did not show a sudden and unexpected appearance on the track or in dangerous proximity thereto, but her approach toward the danger zone, according to all the evidence, was in a slow, continuous walk from the curb to the point of collision. It therefore becomes a question of fact in the case at what point in that slow walk to danger it would become apparent to a reasonably prudent motorman that she was oblivious of her peril and did not intend to stop.

Appellant complains of the petition because it merely states that the motorman failed and neglected to take the necessary steps to avert the collision, and does not charge that the acts which were done were negligently and carelessly done. This criticism is certainly refuted by the language used in the petition— for example—"plaintiff says that by reason of the negligence and carelessness of the defendant" . . . "in charge of the car as aforesaid" . . . The carelessness and negligence charged could refer only to the acts and omissions of the defendant and its servants thereinbefore set out. A petition which sets out the acts about which the plaintiff is complaining with

reasonable certainty and clearness, followed by a general averment that the acts complained of were negligently done, is sufficient. [Dieter v. Zbaren, 81 Mo. App. 612; Wyler v. Ratican, 150 Mo. App. l. c. 479, 131 S. W. 155.] In any event, the defect, not being fatal, cannot be questioned after judgment. [White v. Railroad, 202 Mo. 539, 101 S. W. 14; McQuade v. Railroad, 200 Mo. 150, 98 S. W. 552.]

A further complaint is made as to the petition in that the facts alleged and charges of negligence averred rob the case of the benefit of the humanitarian doctrine, and we are cited to the case of Grout v. Railroad, 125 Mo. App. 552, 102 S. W. 1026, in which case the petition clearly shows that the negligence consisted in the speed at which the car was being propelled, and the allegation of the petition discloses that at the speed at which the car was running it could not have been stopped after the peril was discovered, and as was stated in the opinion in that case, the humanitarian rule takes into account the fact only that one is in danger and injury may be prevented by the exercise of ordinary care. The appellant's contention that the allegation in the present petition is subject to the same criticism is not well taken because in charging a disregard of the exercise of ordinary care after defendant saw or could have seen the peril of the plaintiff the negligent acts consisted in a failure to give any signals or warning of the approach of the car, and a failure to check the speed of the car in time to have prevented the injury. It is the duty of one operating a dangerous instrumentality bearing down on another who is placed in a perilous position to use all the efforts that reasonable prudence dictates in checking the onward progress of such instrumentality, and also to give such warnings as are calculated to bring the one in peril to a realization of his dangerous position so that he may extricate himself. The charge of negligence in this petition, therefore, may be said to reasonably re-

fer to the time after the plaintiff has charged the defendant with a duty to know of her peril.

Complaint is made of plaintiff's instruction No. 2 which is as follows:

"The court instructs the jury that if you find and believe from the evidence that on or about the twenty-eighth day of March, 1912, the plaintiff was crossing Commercial street at the intersection of said street and Lyon street, and that said streets were public highways of Springfield, Missouri, and that as she was crossing the north track of said defendant, at the intersection of Lyon and Commercial streets, she was struck by a west-bound car of said defendant and violently thrown into the air and onto the pavement and by reason thereof was injured, and if you further find from the evidence that in crossing said track the plaintiff was in a perilous position arising from danger of being struck by said car, and that defendant's motorman saw or by the exercise of ordinary care could have seen her in said situation of danger and that thereafter said motorman was negligent, in that he failed to exercise ordinary care in the use of the means at his command to avoid said collision (if you find he so failed), and that said motorman with due regard to the safety of his passengers could with ordinary care in the use of said means have avoided said collision and that as a direct result of said failure (if any) said plaintiff was struck and injured as aforesaid, then your verdict should be in favor of the plaintiff. And this you will do even though said plaintiff was negligent in crossing or going upon said track without looking or becoming aware of the approach of said car."

It is claimed that this instruction given for the plaintiff is broader than the charge of negligence laid in the petition. The petition charges that after the plaintiff's perilous position was known, or by the exercise of ordinary care could have been known, defendant negligently failed to give any signal or warning and

negligently failed to check the speed of the car or stop
it in time to have prevented the injury, although by
the exercise of ordinary care it . could have been
checked or stopped in time to have prevented the colli-
sion and signals could have been given in time to have
averted the accident.    That part of the instruction
complained of is as follows: "and that defendant's
motorman saw or by the exercise of ordinary care could
have seen her in said situation of danger and that
thereafter said motorman was negligent in that he
failed to exercise ordinary care *in the use of the means
at his command to avoid said collision."* We are cited
the following cases which sustain the proposition that
the instructions cannot be broader than the issue ten-
dered in the pleadings. [Davidson v. St. Louis Tran-
sit Co., 211 Mo. 320, 109 S. W. 583; Beave v. St.
Louis Transit Co., 212 Mo. 331, 111 S. W. 52; Lowen-
stein v. Railroad, 110 Mo. App. 686, 85 S. W. 625;
Schroeder v. St. Louis Transit Co., 111 Mo. App.
67, 85 S. W. 968; Wojtylak v. Kansas & Texas
C. Co., 188 Mo. 260, 87 S. W. 506; Polk v. Western
Assurance Co., 114 Mo. App. 514, 90 S. W. 397.] These
cases declare the correct abstract proposition of law
above contended for by appellant. But the instruction
in this case does not contain the alleged error. It was
the failure in avoiding the collision that the plaintiff
was condemning throughout her pleadings and at the
trial, contending that no signals were given after her
peril was known to the motorman and that the car was
not checked or stopped after her position was known
although by the use of ordinary care it could have been
checked or stopped. The only two means at his com-
mand of avoiding the collision was the giving of timely
signals, or checking or stopping the car. The gong
was sounded according to defendant's witnesses, but
plaintiff's witnesses didn't hear it. Of course the car
could only be checked or stopped by the use of the
means at the command of the motorman. There is no

contention that there were any other means at hand which could have been used, and the jury manifestly could have been misled and have held the defendant on some theory that perhaps the collision could have been avoided in any other way than as above indicated. Though it is better practice in instructions to follow as nearly as possible the charges in the petition, where it is clear from the petition, evidence and instructions that the issue was not in fact broadened, reversible error is not made out.

In the case of Ellis v. Street Railway Co., 234 Mo. 657, 138 S. W. 23, the pleadings as shown on page 665 charge practically the same acts of negligence as are charged in the petition under review and the instruction in that case as shown on page 675 uses the exact language as is used in the instruction under review.

It is complained that said instruction No. 2 is self-contradictory and inconsistent in that it submits the humanitarian doctrine and at the same time declares that contributory negligence is excluded. This is a rather remarkable contention in a brief in view of the theory on which a recovery is had under the humanitarian doctrine; that rule is conceived in the admitted or proved negligence of the one injured. When one of these principles appears as a controlling element in a damage suit the other must fail. The language of this instruction follows throughout the language of the instruction approved in the case of Ellis v. Street Railway Co., supra. That the instruction under consideration is proper is established by the following decisions: [Waddell v. Street Railway Co., 213 Mo. 8, 111 S. W. 542; Moore v. St. Louis Transit Co., 194 Mo. 1, 92 S. W. 390; Murphy v. St. Joseph, Etc. Co., 138 Mo. App. 436, 122 S. W. 334; Johnson v. Springfield T. Co., — Mo. App. — , 161 S. W. 1193.] We are referred to the case of Wallack v. St. Louis Transit Co., 123 Mo. App. 160, 100 S. W. 496, as being contrary to this ruling. The opinion in that case on this point was not concurred in

by two of the three judges. However, we do not think the opinion bears the construction placed upon it by appellant.

Appellant complains of instruction No. 1 fixing the measure of damages in that it permitted the jury to allow for such physical pain and suffering as directly resulted from the injuries, the nature and extent of such injuries and their probable duration, and that this is an instruction allowing for permanent injuries and that the evidence will not justify an instruction for damages for permanent injuries. We are cited the case of Prendenville v. St. Louis Transit Co., 128 Mo. App. l. c. 604, 605, 107 S. W. 453. In that case the opinion sets out that the physician unequivocally swears there was no permanent injury, and further that there was no evidence of any character to justify a jury in finding that the plaintiff was permanently injured. It seems that little inconvenience, if any, was attending the plaintiff in that case at the time of the trial. In the present case, the evidence does not disclose that any expert swore one way or another on the question. However, at the time of the trial (which occurred about two years after the collision), plaintiff testified she still suffered from the injuries received, and that she was unable to use her hand to any extent, that there is a scar left on her wrist weakening it, that one of her limbs was caused to drag and feel numb causing her in walking to drag her heel, that the muscles in her limb were drawn, and that she needed a cane to walk with. The testimony of her physician was that she was required to remain on her back in bed three or four weeks while she was in the hospital. Taking into consideration the age of the plaintiff, it would not be an unreasonable inference for the jury to draw that the result of some of the injuries will attend her throughout the remainder of her lifetime. The petition alleged permanent injuries and we think it was sufficiently sustained in this respect by the character of the

evidence outlined. A similar holding may be found in Frazier v. St. Louis S. & R. Co., 150 Mo. App. l. c. 431, 130 S. W. 485. As was held in Moore v. Railroad, 136 Mo. App. l. c. 215, 116 S. W. 440, on an instruction somewhat similar to the one under consideration and on a similar objection, we do not believe that taking into consideration the amount of the verdict the defendant has been prejudiced by this instruction even though there were any doubt as to the right to damages for permanent injuries.

The court also gave the following instruction (No. 3) for the plaintiff:

"You are instructed that it was the duty of defendant's motorman to keep a reasonable lookout for persons upon the track or approaching said track and going into a situation of danger, and if you find that plaintiff was approaching said track and that she was unconscious of the approach of said car and that it was apparent to a reasonably prudent person that she was unmindful of danger and was going upon said track, then it was the duty of the motorman to at once have taken precaution to avoid the collision."

Appellant assaults this instruction as being erroneous in that it fails to state the entire principle and is indefinite. We will pass this by merely referring to the same instruction which received the approval of the Supreme Court in the case of Ellis v. Street Railway Co., supra, l. c. 676.

Instructions numbered 2 and 3, aforesaid, given for plaintiff, correctly declare the law, and when read in connection with defendant's given instructions on the humanitarian rule—which more fully elaborate, qualify and explain the doctrine as applied to the particular case—the jury certainly could not have been misled into believing that it made no difference when or where the plaintiff got on the track she was entitled to recover, because the instructions given for the defendant make it absolutely plain that if her advent

into the danger zone was for such a short period of time or within such a short space as made it impossible for the collision to have been avoided by giving signals or by checking the speed of the car or by stopping it, then her case must fail.

Defendant's refused instructions on the question of contributory negligence were properly refused because the petition and the evidence and the instructions given made liability or no liability depend upon a condition or situation after the plaintiff's negligence had placed her in such situation, and the fact to be determined was whether that perilous position unknown to plaintiff and reasonably apparent to defendant continued for such time and space as the law would require the defendant to avoid the collision.

Appellant assigns error in the introduction over its objection of the testimony of W. T. Curtis who was the only expert offered at the trial to testify concerning the distance within which a street car could be stopped which was traveling at the place in question and at the rate of speed plaintiff's evidence shows this car was running immediately east of the point of collision. This witness is shown to have been a motorman for the defendant company in the city of Springfield for a period of possibly ten years, but that his service had ended ten years before this trial and that he had been and was at the time of the trial in the real estate business. He was permitted over defendant's objections to swear that a street car could have been stopped, going at a speed not greater than ten miles an hour, within about fifty feet, and that one going six or eight miles an hour could be stopped in something like forty feet.

To begin with, it is somewhat questionable whether a person who has had nothing whatever to do with the operation of a street car for ten years, with no showing that he had done anything to keep up in any way with

the use of the modern appliances now used in the operation of street cars, is any better qualified to give an opinion on the distance within which a car that is now in operation can be stopped than the average juror. And answering a question that a car can be stopped in about fifty feet has been held to be no answer at all. [Burge v. Railroad, 244 Mo. 76, 148 S. W. 925.] In this case, the length, size, or weight of the car, the kind of motor or motors, the braking appliances, the nature of the load, and the general condition of the car, were all omitted from the hypothetical questions, yet on cross-examination the witness admitted that all these elements enter into the question and would tend to vary the distance within which a car can be stopped. These were material omissions from the hypothetical questions, and the action of the trial court in overruling defendant's objections constitutes reversible error. [Burge v. Railroad, supra, l. c. 96, and cases cited.] Defendant's objection was made repeatedly while the witness was testifying so that plaintiff had ample opportunity to correct the form of the question. The ruling was complained of in the motion for a new trial and is insisted on here. The hypothetical question should include all the conditions surrounding the car and track and collision that enter into a determination of the time and space within which a car like the one that caused the injuries can be stopped by a reasonably prudent and skillful motorman. Respondent's reply to this contention is that the motorman who was in charge of the car swears that the car did actually stop in from thirty-five to forty-five feet. The question and answer to which respondent alludes in this connection, standing alone, are misleading, because a reading of the motorman's testimony shows that he had reference to the place of collision and that the car actually stopped within thirty-five or forty feet from that point, and his testimony is that the car at the point of collision was running four or five miles an hour.

In order to know what a witness testifies, his testimony must be read as a whole, and not by taking detached portions or single sentences. [Bruce v. United Railways Co., 175 Mo. App. 568, 163 S. W. 548, 549.]

As the liability of the defendant largely depends upon whether the car could have been sufficiently checked or stopped after the first appearance of danger, it is important to know in what distance this particular car at this place could have been sufficiently checked or stopped, and without such evidence her case must necessarily fail. However, inasmuch as she may be able to supply this defect, we will not reverse the judgment outright.

In view of another trial it is proper to suggest that the instructions given for defendant contain several errors in its favor. We will not attempt to point the same out in detail, as they are not likely to occur again, further than to say that as the first part of the instruction numbered 11 tells the jury that under the law plaintiff at the time of the accident was guilty of negligence and plaintiff's instructions tell the jury that contributory negligence is not a defense in this case under the theory on which plaintiff sues, no instruction ought to be given stating or implying that plaintiff's negligence is a defense. Instruction numbered 4, and perhaps others, is faulty in this respect. Instruction numbered 4 also implies that defendant only owed the plaintiff the duty of stopping the car after it beame apparent that plaintiff did not hear the gong. This would be true only in case the car was such a distance from plaintiff at the time the motorman discovered her danger that he had time to have used both methods of avoiding the collision. If, at the time her danger was discovered, the car was too close to her to permit of experimenting with the gong first, then it became defendant's duty to at once stop the car or to both sound the gong and stop the car simultaneously.

The judgment is reversed and the cause remanded. *Robertson, P. J.,* concurs. *Sturgis, J.,* concurs in a separate opinion.

## SEPARATE CONCURRING OPINION.

STURGIS, J.—I fully concur in the opinion of Judge Farrington in this case. In view of another trial I have thought it best to say that in my opinion instruction numbered 2, given for plaintiff and quoted in full in that opinion, when taken alone is faulty, in that, being an instruction on the whole case, it loses sight of one essential element of the humanitarian rule as applied to cases of this character, to-wit, that plaintiff must have been oblivious to her own danger and that such fact must have been reasonably apparent to the motorman in charge of the car. This element is given full recognition in plaintiff's instruction numbered 3, also there quoted in full, in that the jury are told that if plaintiff "was approaching said track and that she was *unconscious* of the approach of said car and that *it was apparent* to a reasonably prudent person that she was *unmindful of danger* and was going upon said track, then it was the duty of the motorman to at once have taken precaution to avoid the collision." It is true that these two instructions are taken from and approved in Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 675, 138 S. W. 23, and when taken together may be unobjectionable, but I do not find that the error here mentioned was there called to the court's attention and it is not discussed.

That, in cases like this, the fact that plaintiff was unconscious of her danger and that this was reasonably apparent to the person operating the car is an essential element of the humanitarian doctrine, which holds defendant liable for its negligence regardless of the previous and contributory negligence of plaintiff, is shown by the Ellis case, supra, where the court says:

"If the evidence is to be believed, it was plain he was approaching the track bent on crossing it at a gait and with a demeanor showing *unconsciousness* of impending danger. Under the facts, a reasonably prudent motorman could see so much as that, if on watch and performing his duty in looking out. That duty did not commence merely when the horse's feet were actually on the south track. It commenced at such time as a prudent motorman *could see* that he was intent on pursuing his journey across the track, *oblivious* to danger from the car. Then was when he came within the danger zone. . . . If the conduct and actions of a party approaching a street railway track would lead a motorman of ordinary prudence to conclude that such party was going upon the track in front of the car, the right of the motorman to act on the presumption that the person would stop before going on the track ceases." In Waddell v. Railroad, 213 Mo. 8, 16, 111 S. W. 542, the court, in specifying the elements which are included in the humanitarian doctrine, says that, where plaintiff is guilty of contributory negligence concurrently with that of the motorman, the defendant could not be held liable "unless it appeared from the evidence that the motorman could have stopped the car in time to have prevented the injury to plaintiff after he had become aware, or by the exercise of reasonable care could have known, of her *ignorance of the danger* which confronted her and of her purpose to enter into it." The rule is stated in Degonia v. Railroad, 224 Mo. 564, 595, 123 S. W. 807, in these words: "Plaintiff's case therefore must proceed upon the theory that defendant's servants saw the perilous position of the deceased, and *saw such things as would lead prudent persons* to believe that deceased was *oblivious* to such perilous position, and after so seeing had time to obviate and avoid the accident by ordinary care and caution upon their part. It devolved upon the plaintiff to show these facts." The Supreme Court also pointed .

out this element of the humanitarian doctrine in Dutcher v. Railroad, 241 Mo. 137, 165, 145 S. W. 63, by saying: "There is a working presumption indulged that a party approaching a street car track will stop and not step upon it in front of a going car, but that presumption ceases when by the *actions* and *conduct* of the traveler it would be *apparent* to a prudent motorman that he does intend to go upon the track." [Ellis v. Railroad, 234 Mo. l. c. 680-1 and cases cited.] Many other cases might be cited and quoted from to this same effect but these will suffice.

This doctrine is often called the "last chance doctrine" and is said to be based on the theory that defendant has the "last clear chance" to avoid the collision. It is clear that defendant does not have the last clear chance unless the plaintiff is oblivious of her own danger, for, if cognizant of her danger and free to act, the plaintiff has an equal or later chance to save herself; and, unless there is something to apprise the defendant that plaintiff is unaware of her peril, it would have a right to presume that plaintiff would refrain from going into a place of danger or, if already there, would extricate herself. In this respect a person oblivious to danger is treated much the same as a person who, from mental or physical infirmity, is incapable of appreciating danger or extricating himself therefrom.

It seems to me that in a case like this an instruction covering the whole case as to liability is deficient in merely telling the jury, as this one does, that if plaintiff, though by her own negligence, was in a perilous situation from danger of being struck by the car, and that defendant's motorman saw or could have reasonably seen her in a situation of danger and the motorman was thereafter negligent in avoiding the injury, that plaintiff should recover, for this ignores the element of plaintiff being unaware of her danger and defendant's knowledge of that fact. It seems to

me that such clause of the instruction should be so modified as to read substantially: ''and if you further find from the evidence that in crossing said track the plaintiff was in a perilous situation arising from danger of being struck by said car and was *oblivious to her danger,* and that defendant's motorman saw or by the exercise of ordinary care could have seen her in said situation of danger *and that she was unaware of the same,* and that thereafter said motorman was negligent,'' etc. The words in italics indicate the modification. It seems to me that the criticism of an instruction similar to this is the case of Chamberlain v. Railroad, 133 Mo. 587, 605, 33 S. W. 437, 34 S. W. 842, is applicable to instruction numbered 2, given in this case, to-wit: ''But the instruction would not be proper in all cases, as the signal if given in time would be all that was required to apprise a trespasser, until it is seen he *apparently does not hear it.* The engineer is not required to stop his train if the trespasser is far enough away to warn him, and a timely warning is sufficient until it is *seen that for some cause it is not heeded;* then it is his duty to avoid killing, even a trespasser, if by the exercise of ordinary care it can be done.''

This is not written because of any difference between my views and that of the other judges on this question.